## COMMISSIONER OF INTERNAL REVENUE v. SWENT et ux.

### No. 5449.

Circuit Court of Appeals, Fourth Circuit.

May 8, 1946.

GRONER, C. J., dissenting.

———◆———

S. Walter Shine, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Nathan Moran, of San Francisco, Cal. (George E. Haw, of Richmond, Va., on the brief), for respondents.

Before GRONER, Chief Justice of the U. S. Court of Appeals for the District of Columbia, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States allowing the taxpayers James Swent and Ursula Swent (husband and wife) an exemption from United States income taxes on $25,-000 earned during the year 1940 by James Swent in Mexico. There is no dispute as to the facts.

The applicable statute is Section 116(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 116, prior to the 1942 amendments, which reads:

"Sec. 116. Exclusions from gross income.

"In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(a) Earned income from sources without United States. In the case of an individual citizen of the United States, a bona fide non-resident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25(a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection. * * *"

The only question presented to us for decision is whether, under the facts of this case, each of the Swents was "a bona fide non-resident of the United States for more than six months during the taxable year" (1940).

The answer to this question depends upon the interpretation or construction of the words just quoted above. That, we think, is a question of law, so that we are not bound to follow the decision of the Tax Court under Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Said Mr. Justice Jackson in that case (320 U.S. at page 501, 64 S.Ct. at page 246):

"It is difficult to lay down rules as to what should or should not be reviewed in tax cases except in terms so general that their effectiveness in a particular case will depend largely upon the attitude with which the case is approached. However, all that we have said of the finality of ad-

ministrative determination in other fields is applicable to determinations of the Tax Court. Its decision, of course, must have 'warrant in the record' and a reasonable basis in the law. But 'the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'"

See, also, John Kelley Co. v. Commissioner, 66 S.Ct. 299, decided by the United States Supreme Court January 7, 1946. Since we think the decision of the Tax Court lacks "warrant in the record" and is without "a reasonable basis in the law", we feel compelled to reverse that decision.

James Swent first went to Mexico in 1915 and taxpayers were married there that year. In 1918 he was employed by the San Luis Mining Company at Tayoltita, Mexico, of which he became manager in 1920, a position which he has held ever since. The taxpayers and their family lived in Tayoltita in a house belonging to the company. When Swent was absent from Mexico (an occurrence far from unusual), the mine was operated and managed by an assistant manager and a rather large staff of Mexicans and Americans. During these absences he was occasionally consulted by telegraph on questions of policy arising in connection with the management of the mine.

In registering, which is required by the Mexican Government as a prerequisite to entering a gainful occupation in that country, Swent declared that he was a resident of Tayoltita. In his passports, too, that village was given as his place of residence.

During the tax year 1940, the taxpayers spent 241 days (approximately two-thirds of the year) in the United States, on four different visits. And in each of the years 1939, 1942, 1943, taxpayers spent more than six months in this country. They rented an apartment in San Francisco during 1940, on a month to month basis and this apartment was used by their sons who attended school in California. And, while he was in the United States during 1940, Swent served as consultant in mining litigation in Idaho over a period of several months, for which he received in that year the sum of $10,000. For similar services in New Mexico he received during that year $4,000. Neither of these employments had any connection whatever with the San Luis Mining Company.

■ The word "resident" (and its antonym "nonresident") are very slippery words, which have many and varied meanings. Sometimes, in statutes, residence means domicile; sometimes, as in the instant case, it clearly does not. When these words, "domicile" and "residence", are technically used by persons skilled in legal semantics, their meanings are quite different. This distinction is clearly set out in Matter of Newcomb's Estate, 192 N.Y. 238, 250, 84 N.E. 950, 954:

"As 'domicile' and 'residence' are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two places of 'residence,' as in the city and country, but only one 'domicile.' 'Residence' means living in a particular locality, but 'domicile' means living in that locality with intent to make it a fixed and permanent home. 'Residence' simply requires bodily presence as an inhabitant in a given place, while 'domicile' requires bodily presence in that place and also an intention to make it one's domicile."

We think the error into which the Tax Court fell was partially caused by a confusion of these terms in lending to the word "residence" some attributes which really belong only to the word "domicile", and by laying too great stress, as to "residence", on the animus revertendi.

■ The Commissioner here contends (we think, properly) that the exemption statute requires actual physical absence from the United States for six months during the taxable year. If that criterion be applied here, clearly the taxpayers fall outside the exemption. The taxpayers, however, strenuously and picturesquely maintain:

"The Swents established their residence in Mexico in 1915, and their trips to the United States have never been for anything but temporary and transitory purposes. Their Mexican residence is not something they pack up in their suitcases and bring with them every time they cross the inter-

national border, nor is it a question of counting the days spent north of the line to determine whether they have become residents here, like a couple of school children exposed to the measles, to find out whether the disease has taken."

The Bureau of Internal Revenue has consistently interpreted the statute before us as applying only to persons physically absent from the United States for six months. Thus S.M. 5446—V-1 Cum.Bull. 49 (1926) states "the exemption was intended to be accorded to all citizens of the United States who are actually out of the United States for more than six months during the year." To like effect is G. C. M. 9848, X-2 Cum. Bull. 178, 179 (1931): "the Bureau has held that it applies to any American citizen who is actually outside the United States for more than six months during the taxable year."

And this view, we think, finds further support in the legislative history of the statute. The House Bill used the much clearer words: "while actually employed outside the United States if so employed for more than six months during the taxable year." The Senate struck out these clear words and substituted the ambiguous phrase (now before us) "bona fide nonresident * * * for more than six months during the taxable year." However, it seems evident that the Senate intended no change from the meaning of the House Bill. When the Senate Amendment was under discussion, Senator Smoot remarked in no uncertain terms:

"We simply say that *if they are out of the United States for six months,* they are to be treated the same as if they lived in a foreign country all the time. There is no possible objection to it." (Italics supplied.)

Judicial authority on the problem before us is suprisingly scant. The Tax Court in its opinion in the present case cited its earlier decision in Estate of Fiske v. Commissioner, 44 B.T.A. 227; but this case was reversed by the Circuit Court of Appeals for the Seventh Circuit (Circuit Judge Major dissenting) in Commissioner v. Fiske's Estate, 7 Cir., 128 F.2d 487. Certiorari denied 317 U.S. 635, 63 S.Ct. 63, 87 L.Ed. 512, which appears to be the only decision of a federal appellate court squarely in point. The Tax Court also cited Carstairs v. United States, D.C.E.D.Pa. 1936, 17 A.F.T.R. 1044. In the Carstairs case, the taxpayer (who had long been a resident of England) spent the first seven weeks of the taxable year in the United States, then returned to England, intending to remain there for the rest of the taxable year, but died in July. Thus he was in the United States less than a seventh of the taxable year and he doubtless would have qualified for the exemption had he lived two months longer. There is force, with respect to the Carstairs case, in the comment of counsel for the Commissioner: "The facts of the case carried a strong sympathetic appeal which perhaps influenced the decision."

In the Fiske case, Fiske had charge of the Paris office of an American firm. He and his family had long resided in Paris. In December 1935, he and his wife came to the United States with a clear intention of returning to Paris after a stay of three months in this country. In January 1936, he became ill and was unable, on account of illness, to return to Paris until 1937. The Fiske situation was different from our case in two respects: (1) Fiske was absent from France (and present in the United States) the whole of the taxable year; Swent was absent from Mexico (and present in the United States) two-thirds of the taxable year. (2) Fiske intended to spend more than six months of the taxable year out of the United States but was prevented from doing so by ill health, a factor beyond his control; Swent, *of his own volition,* (though partly influenced by considerations affecting his health and that of his wife) spent two-thirds of the taxable year in the United States, actively pursuing his profession here for profit.

In his opinion in the Fiske case, 128 F. 2d at page 490, Circuit Judge Kerner said:

"Residence is the place of abode, whether permanent or temporary, Penfield v. Chesapeake, etc., Co., 134 U.S. 351, 356, 357, 10 S.Ct. 566, 33 L.Ed. 940, a physical fact, Matter of Newcomb's Estate, 192 N. Y. 238, 84 N.E. 950, 954, and means where a man abides or lives, Hunter v. Bremer, 256 Pa. 257, 100 A. 809, 811, Ann.Cas.

1918A, 152, and so applying the tests enumerated in the cases cited, we believe that Congress was not concerned with the question where a taxpayer had his permanent residence, but rather intended the act to apply to any American citizen actually outside of the United States for more than six months during the taxable year, engaged in the promotion of American foreign trade, and it is no answer to say that it was at all times Fiske's intention to return to Paris and that he was prevented from carrying out this intention because of illness. Cf. District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329. See also State of Texas v. State of Florida, 306 U.S. 398, 424, 425, 59 S.Ct. 563, [830], 83 L.Ed. 817, 121 A.L.R. 1179."

We point out that there is no question as to the power of the United States to tax the income earned by Swent in Mexico. Cook v. Tait, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895. The exemption statute is thus a pure matter of legislative grace and such statutes should be construed strictly against the taxpayer claiming the statutory exemption. United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40. And such exemption statutes must be construed in the light of the objects and purposes which they were designed to subserve. Helvering v. New York Trust Co., 292 U.S. 455, 464, 465, 54 S.Ct. 806, 78 L.Ed. 1361.

In view of what has been said, we feel that Swent, who in 1940 spent two-thirds of the year in the United States for pleasure and profit (though probably considerations of health had some influence), whose stay was neither casual nor incidental, was not "a bona fide non-resident of the United States for more than six months during the taxable year" as that phrase is used in the exemption statute. Nor does it seem to us that he is the victim of Congressional injustice. His contribution to this country, in the form of income taxes on his Mexican earnings in 1940, seem, under all the circumstances of this case, only a fair return for all the privileges he enjoyed under the beneficent aegis of our Government. Such a contribution, in spite of Swent's obvious intention to return to

Mexico, we think, conforms to the spirit of the exemption statute.

The decision of the Tax Court of the United States is, therefore, reversed.

Reversed.

Judge GRONER is of opinion that the Tax Court was correct in deciding that petitioners have been since 1915, and were in 1940, bona fide non-residents of the United States within the intent of Sec. 116 (a) of the Revenue Act of 1938, 26 U.S.C. A. Int.Rev.Code, § 116.

He also is of opinion that this case falls within the rule of the Dobson case, as the rule in that case was enlarged in the recent decision of the Supreme Court in John Kelley Co. v. Commissioner (Talbot Mills v. Commissioner) 66 S.Ct. 299.