## MYERS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6019.

United States Court of Appeals Fourth Circuit.

Argued March 7, 1950.

Decided March 28, 1950.

William Taft Feldman, Baltimore, Md. (Albert J. Fleischmann, Baltimore, Md., on brief) for petitioner.

George D. Webster, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General; Ellis N. Slack and A. F. Prescott, Special Assistants to the Attorney General, on brief) for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States that petitioner, O'Kelly W. Myers, for the year 1943, was not entitled to the benefits of Section 116(a) of the Internal Revenue Code, 26 U.S.C.A. § 116(a), which grants an exemption from federal taxation of earned income received from sources without the United States to "an individual citizen * * * who establishes * * * that he is a bona fide resident of a foreign country * * * during the entire taxable year".

It is undisputed that petitioner was a citizen of the United States, and that the income in question was received from sources without the United States. Thus, the only question before us is whether the Tax Court was correct in holding that petitioner was not a bona fide resident of New Providence Island, British West Indies, during the entire taxable year 1943.

There is no dispute about many facts found by the Tax Court. For a number of years prior to 1942, petitioner was employed as a senior engineer with the Board of Water Supply of New York City. In

May, 1942, petitioner accepted employment as chief engineer on a construction project of the Pleasantville Constructors, Inc., for work on the Island of New Providence, Bahamas. Petitioner requested and obtained a leave of absence without pay from the Board of Water Supply in order to accept this employment. Petitioner left Newburgh, New York, May 18, 1942.

Pleasantville Constructors, Inc., were engaged in the construction of airfields for the British Government in Nassau. Petitioner's first written contract of employment was executed after his arrival in Nassau on May 19, 1942.

Shortly after petitioner's arrival in Nassau, he became acquainted with Harold Christie, who was connected with Sir Harry Oakes and the Nassau Engineering Company. During the rest of the year 1942, petitioner came in almost daily contact with Christie, who formed apparently a high opinion of petitioner's skill as an engineer. Christie requested petitioner to become associated with a huge project for the development of certain land in the Bahamas. This development, it was contemplated by all the interested parties, would be a continuous operation involving several thousand acres of land and extending over several years.

O'Kelly Myers, the petitioner, testified that in November, 1942, he entered into an agreement with Christie, under which petitioner was to work for the Nassau Engineering Company as soon as petitioner's obligations to Pleasantville Constructors were fulfilled. It was then clearly contemplated by both Myers and Christie that petitioner would not complete his work for Pleasantville until well into 1943 and that petitioner's connection with Nassau Engineering Company would be a matter of years. As a fact, petitioner's employment with Pleasantville terminated December 20, 1943, and petitioner entered into his employment with Nassau Engineering Company that very day. And petitioner continued in the employ of Nassau Engineering until March, 1944, when war conditions, beyond the control of petitioner and Christie, terminated this connection.

Petitioner's evidence here was fully corroborated by the testimony of his wife and daughter. Further, petitioner tried to secure Christie as a witness but Christie was unavailable, since he was in England when the case was tried below. Petitioner also endeavored to introduce in the Tax Court an affidavit of Christie, which petitioner claimed, would fully support petitioner's testimony as to the circumstances surrounding the contract between petitioner and Nassau Engineering Company.

■ We think the decision of the Tax Court of the United States that petitioner was not "a bona fide resident of a foreign country or countries during the entire taxable year" of 1943 was clearly erroneous and must therefore be reversed. It is our considered opinion that in November, 1942, petitioner intended to become a resident of the Bahamas for the entire year of 1943, and this intention was completely effectuated.

The real basis for the view taken by the Tax Court appears to be found in the first sentences of the Tax Court's opinion: "The documentary evidence tends to furnish a more satisfactory showing than the unsupported memory of witnesses as to when petitioner could have reached any intent to make Nassau his place of residence. His income tax return filed the end of February, 1943, gives his place of residence for the whole year 1942 as Newburgh, New York. In a letter written several years closer to the events he advised a deputy collector that in 'early 1943' he moved his family to Nassau with the intention of permanent residence."

■ The statement in petitioner's federal income tax return for 1942 that he was a resident of Newburgh, New York, does not militate against his being a resident of the Bahamas for all of the year 1943. Petitioner did not claim (indeed could not claim) that he was a resident of the Bahamas for the year 1942. Accordingly, he was liable to pay a federal income tax on the money he received in the Bahamas. It was thus proper that he should state, for the purposes of the 1942 tax, that he was

a resident of Newburgh. And an individual can have two residences.

The letter written by petitioner in 1945 states that in "early 1943" petitioner moved his family to Nassau with the idea and intention of establishing a *permanent residence* there. This would indicate that in early 1943, petitioner acquired a *domicile* in Nassau. And surely the idea that petitioner acquired a domicile in Nassau in 1943 is in no wise inconsistent with the view that he had acquired a *residence* in Nassau before he established his *domicile* there.

■ It is quite clear that, in the tax statute before us, *residence* is used in the limited sense as contrasted, rather than synonymous, with *domicile*. Thus, speaking for our Court, Circuit Judge Dobie stated, in Commissioner v. Swent, 155 F.2d 513, 515:

"The word 'resident' (and its antonym 'nonresident') are very slippery words, which have many and varied meanings. Sometimes, in statutes, residence means domicile; sometimes, as in the instant case, it clearly does not. When these words, 'domicile' and 'residence', are technically used by persons skilled in legal semantics, their meanings are quite different. This distinction is clearly set out in the Matter of Newcomb's Estate, 192 N.Y. 238, 250, 84 N.E. 950, 954:

"'As "domicile" and "residence" are usually in the same place, they are frequently used, even in our statutes, as if they had the same meaning, but they are not identical terms, for a person may have two place of "residence," as in the city and country, but only one "domicile." *"Residence" means living in a particular locality,* but "domicile" means living in that locality with intent to make it a fixed and permanent home. *"Residence" simply requires bodily presence as an inhabitant in a given place,* while "domicile" requires bodily presence in that place and also an intention to make it one's domicile.' (Italics supplied.)

"We think the error into which the Tax Court fell was partially caused by a confusion of these terms in lending to the word 'residence' some attributes which really belong only to the word 'domicile', and by laying too great stress, as to 'residence' on the animus revertendi."

In Swenson v. Thomas, 5 Cir., 164 F.2d 783, 784, Circuit Judge Sibley said: "We think there is no evidence whatever that there was any want of good faith. Swenson did not live in Colombia to evade taxes or for any bad purpose, but only to do the work he was sent to do. We think there can be no doubt that his continuous and unbroken living there for four years was 'residence'. He did not change his citizenship, nor does the law contemplate that. The exemption was expressly made for citizens of the United States. The law says nothing of domicile, or changing that. Domicile is not changed by foreign residence so long as there is an intention to return home. Swenson in applying for his passport stated his domicile was in the United States; and he has never changed it. But notwithstanding the fact that he established no fixed home in Colombia, or even a settled place of abode, his work requiring him to be ever on the move, it remains true that he was always living in Colombia, attending to his business there; and that we think constitutes residence there."

See, also, Commissioner v. Fiske's Estate, 7 Cir., 128 F.2d 487, 490; Yaross v. Kraemer, D.C., 83 F.Supp. 411; Bouldin v. Commissioner, 8 T.C. 959. We think, on the facts, the instant case before us is clearly distinguishable from Downs v. Commissioner, 9 Cir., 166 F.2d 504, and Johnson v. Commissioner, 7 T.C. 1040, which were relied on by the Commissioner.

Regulation 111, Section 29.211-2 of the Commissioner of Internal Revenue makes a distinction between (1) a mere transient or sojourner and (2) a resident. Under this regulation, petitioner, to come within the exemption statute, must be a resident, not a transient or sojourner. Hardly, under the facts of the case before us, could petitioner be called a mere *transient or sojourner* in the Bahamas during 1943; he clearly, under the Regulation, was a bona fide *resident*. See Swenson v. Thomas, 5 Cir., 164 F.2d 783, 784-785; Yaross v. Kraemer, D.C., 83 F.Supp. 411, 412.

If, as we have held, petitioner actually acquired and maintained a residence in the Bahamas for the whole tax year, 1943, he does not forfeit or lose this status by virtue of several short visits to the United States during this year. These visits were five in number, none lasting more than five days. In Yaross v. Kraemer, supra, petitioner made eleven visits, during the year, to the United States. Said District Judge Hincks in the Yaross case, 83 F.Supp. 411, 413; "However, such visits when viewed against the entire background of the case I think insufficient to break the continuity of his Canadian residence. I hold that these occasional visits even in the aggregate were of a duration too short to be accorded controlling significance. They were only incidental to the main stream of the plaintiff's life."

The Tax Court's opinion endeavors to make much of the fact that many arrangements, necessitated by petitioner's stay in the Bahamas, were not made until some time in 1943. Surely, in the case of any practical person, these arrangements would be made after, and not before, the forming of the intention to remain indefinitely in the foreign country. Some of these arrangements were the moving of petitioner's family to the Bahamas, the sale of his house in the United States and his application to the New York Board of Water Supply for his retirement and resultant pension. Further, as we have here indicated, petitioner's intention to become a resident of the Bahamas was not formed until very late in the year 1942.

The record in this case abounds in voluminous evidence as to the many and varied activities of petitioner and his family before, during, and after the tax year in question, 1943. Some of these activities were the goings and comings of petitioner and his family, the housing arrangements of petitioner, his maintenance of bank accounts in the United States, his passports and his leaves of absence from Pleasantville Constructors, together with extensions of these passports and leaves of absence. No useful purpose would be served by a review or analysis of all this evidence. We content ourselves with observing that the whole picture, viewed in its totality, is entirely consistent with the opinion we have formed—that petitioner was a bona fide resident of the Bahamas during the entire tax-year of 1943 and that his income derived from his services in the Bahamas is exempt from the federal income tax.

The decision of the Tax Court of the United States is reversed, and the case is remanded to that court with directions to enter judgment in favor of the petitioner, O'Kelly W. Myers.

Reversed.