JONES, Collector of Internal Revenue, v. KYLE.

No. 4222.

United States Court of Appeals
Tenth Circuit.

July 9, 1951.

Rehearing Denied Aug. 13, 1951.

Phillips, Chief Judge, dissented.

Helen Goodner, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and George D. Webster, Sp. Assts. to the Atty. Gen., and Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., on the brief), for appellant.

John E. Marshall, Oklahoma City, Okl. (Charles E. Dierker, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

During the year 1945, O. A. Kyle, hereinafter referred to as the taxpayer, was employed in Saudi Arabia. He included in his income tax return for that year income derived from such employment and paid the tax thereon. A claim for refund was seasonably filed. No action was taken on the claim within six months after the date of its filing, and the taxpayer instituted this action against the Collector of Internal Revenue to recover the amount of the tax paid. The basis of the action was that the income was exempt from tax under section 116(a) of the Internal Revenue Code, 26 U.S.C. § 116(a). Judgment was entered for the taxpayer, 92 F.Supp. 600; and the Collector appealed.

The Government was clothed with power to reach and tax the income of the taxpayer even though it was earned outside the United States. Cook v. Tait, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895. A taxpayer asserting exemption from income tax must be able to point to an applicable statute granting the exemption and bring himself clearly within its terms. And a provision granting a special exemption is to be strictly construed. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S. Ct. 109, 85 L.Ed. 29.

The taxpayer relies upon section 116(a), supra, to exempt from tax the income in question. The exemption granted by the

section was first enacted into law as section 213(b) (14) of the Revenue Act of 1926, 44 Stat. 9. In its original form, it exempted from tax income derived from sources outside the United States by a citizen of the United States who was a bona fide non-resident of the United States for more than six months during the taxable year. And with an exception not having material bearing here, the section in substantially the same language remained in effect until 1942. The section was amended by section 148(a) of the Revenue Act of 1942, 56 Stat. 798, 841. And it was further amended by section 107(b) of the Revenue Act of 1943, 58 Stat. 21, 31, but that amendment does not have material bearing here. The statute as amended in 1942 exempts from tax income derived from sources outside the United States by a citizen of the United States who establishes to the satisfaction of the Commissioner of Internal Revenue that he was a bona fide resident of a foreign country or of foreign countries during the taxable year. Treasury Regulation 111, section 29.211–1, promulgated under the statute, provides in effect that whether an individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by application of the principles of sections 29.211–2, 29.211–3, 29.211–4, and 29.211–5 relating to what constitutes residence or non-residence in the United States, as the case may be, of an alien individual. Section 29.211–2 in pertinent part reads

"An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned."

This review makes it plain that the change in the statute created a new test for exemption. Prior to the amendment the test was whether the taxpayer was a bona fide non-resident of the United States for more than six months during the taxable year. Since the amendment became effective, the test is whether the taxpayer was a bona fide resident of a foreign country or of foreign countries during the entire taxable year. Emphasis is no longer placed upon mere non-residence. It has been shifted to a bona fide resident of a foreign country or of foreign countries. The amendment not only extended the necessary time to a full year, but it changed the character of the status required for exemption from that of a non-resident of the United States to a bona fide resident of a foreign country or of foreign countries. Downs v. Commissioner, 9 Cir., 166 F.2d 504, certiorari denied, 334 U.S. 832, 833, 68 S.Ct. 1346, 92 L.Ed. 1759.

■ Courts have said much in respect to points of similarity and at the same time shades of difference, distinction, and contrast between domicil and residence. But the facts in this case eliminate need to explore the refinements of nomenclature in the use of these terms. Here, the taxpayer was a pipe fitter by trade. He was married and lived in Oklahoma. For the purpose of accumulating money with which to purchase a farm in that state, he entered into a written contract with a Brazilian corporation to work on the construction of a refinery and a stabilization plant in Saudi Arabia. The contract was executed in 1944, and it provided that the period of employment should be eighteen months. While the taxpayer understood that the term of employment was eighteen months, he assumed that he could work longer if he desired to do so. He arrived in Saudi Arabia in December, 1944, and he

worked there until May, 1946, at which time he returned to the United States; and he later purchased a farm in Oklahoma with money earned in Saudi Arabia. At the time he left the United States he intended to remain in Saudi Arabia three years. But he never at any time intended to remain there longer. He returned sooner because of a change in the personnel of his employer. The company arranged for his passport and paid for his passage to Saudi Arabia and return. When he arrived there the company took possession of his passport and he did not see it again until he left to come back home. Apparently the passport was good for eleven or twelve months. In any event, while the taxpayer was in Saudi Arabia he made application for its extention for a period of eleven months—until August, 1946. During all the time the taxpayer was in Saudi Arabia, he lived in temporary barracks provided by the company and the company furnished his meals—all without cost or charge to him. He was one of seven or eight hundred American workmen living in the barracks and it was "like a little piece of America transported to Saudi Arabia." He made no effort to take his wife with him. She remained in Oklahoma. He did not pay any taxes to the government of Saudi Arabia. He did not apply for naturalization or citizenship. He did not establish living quarters for himself. He did nothing to identify himself with the customs or habits of that country or to assimilate himself even casually into its life or society. Out of his salary, the company paid him $50.00 per month in Saudi Arabia, paid $100 per month to his wife in Oklahoma, and deposited the balance to his credit in a bank in the United States. Viewed in their totality, these facts and circumstances make it clear that the taxpayer did not go to Saudi Arabia for permanent residence. He did not go there for an indefinite or undetermined period. He did not go on the basis of a mere floating intention, indefinite as to the time of his stay there or indefinite as to the time of his return to the United States. He went for a specific purpose and for a fixed period of time. He went with the firm intention of returning to the United States at the end of eighteen months when his employment with the company terminated, or in any event not later than three years after his arrival there. And his acts and conduct throughout his stay there were uniformly consistent with that intent and purpose. He was not a bona fide resident of that country throughout the taxable year 1945, within the intent and meaning of section 116(a). Downs v. Commissioner, supra.

The trial court cited the cases of Swenson v. Thomas, 5 Cir., 164 F.2d 783, and Myers v. Commissioner, 4 Cir., 180 F.2d 969; and the taxpayer places strong reliance upon them. But both of these cases were substantially different from this one in respect to decisive facts. In Swenson v. Thomas, the taxpayer did not leave a wife in the United States. His work in Colombia required him to spend most of his time in forests and jungles, and he moved from place to place. Obviously, such conditions made it infeasible for him to establish a home, a residence, or other fixed living quarters at any specific place. And he paid income taxes to the government of Colombia while in that country. In Myers v. Commissioner, the taxpayer was employed by the Board of Water Supply of New York City. He accepted employment as chief engineer for a construction project of Pleasantville Constructors, Inc. on the Island of New Providence, Bahamas. He sought and obtained a leave of absence without pay from the Board of Water Supply in order to accept the new employment. About six months after beginning his work for Pleasantville Constructors, the taxpayer entered into an agreement to begin work for the Nassau Engineering Company as soon as his obligations to Pleasantville Constructors were fulfilled. At that time it was contemplated that he would not complete his work for Pleasantville Constructors until well into the following year and that his connection with Nassau Engineering Company would be a matter of years. His employment with Pleasantville Constructors ended about a year after the agreement with Nassau Engineering Company was entered into and he then went to work for the

Nassau Company. He continued that employment for about fifteen months and it then terminated, due to war conditions. Other cases were cited by the trial court, and the taxpayer brings to our attention still others. But some of them were decided before the statute was amended and others are not fairly comparable in respect to factual situation.

The judgment is reversed and the cause remanded with directions to dismiss the action.

PHILLIPS, Chief Judge (dissenting).

During the taxable year ending December 31, 1945, Kyle received wages from Compania Constructora Bechtel-McCone, S.A., a foreign corporation, for personal services rendered that company in Saudi Arabia. He received no other income. He filed an income tax return with the Collector at Oklahoma City, Oklahoma, and reported such wages. A tax of $923.22 was assessed, which Kyle paid. Thereafter, he filed a timely claim for refund on the ground that for the entire taxable year ending December 31, 1945, he was a citizen of the United States, a bona fide resident of Saudi Arabia, and that the wages received constituted earned income. The Commissioner failed either to allow or reject the claim within six months. Thereupon Kyle brought this action for refund of the tax paid, with interest and costs. The trial court found that during the entire taxable year of 1945 Kyle was a citizen of the United States and a bona fide resident of Saudi Arabia; that during such year he received from sources without the United States the amount of wages reflected in his income tax return, and that such wages constituted earned income and were exempted from taxation. This is an appeal from a judgment awarding Kyle $923.22, with interest and costs.

Section 116 of the Internal Revenue Code, as amended by § 148(a) of the Revenue Act of 1942, 56 Stat. 798, 841, and § 107 of the Revenue Act of 1943, 58 Stat. 21, 31, provides that in the case of an individual citizen of the United States who is a bona fide resident of a foreign country during the entire taxable year, the amounts received by him from sources without the United States, if such amounts constituted earned income, shall not be included in gross income and shall be exempt from taxation.

Section 29.116-1 of Treasury Regulations 111, as amended by T. D. 5373, 1944 Cum. Bull. 143, in part, provides:

"Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of sections 29.211-2, 29.211-3, 29.211-4, and 29.211-5, relating to what constitutes residence or non-residence, as the case may be, in the United States in the case of an alien individual."

Section 29.211-2 of Treasury Regulation 111, in part, provides:

"An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned."

The word "resident" is a term of many and varied meanings.[1] It was, therefore, appropriate for the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to adopt inter-

1. Commissioner v. Swent, 4 Cir., 155 F. 2d 513, 515; Myers v. Commissioner, 4 Cir., 180 F.2d 969, 971; United States v. Rubinstein, 2 Cir., 166 F.2d 249, 254.

pretive regulations.[2] As used in the statute and as interpreted by the regulation "residence" means broadly, presence as an inhabitant in a given place,[3] not as a transient, but either indefinite as to time or for a purpose that is of such a nature that an extended stay be necessary for its accomplishment, although the person intends at all times to return to his domicile when the purpose has been consummated or abandoned.[4]

On October 9, 1944, Kyle entered into a preliminary contract with Bechtel-McCone, by which he offered to enter into its employ at Ras Tanura, Saudi Arabia, or in the general vicinity thereof, and Bechtel-McCone, subject to conditions not now material, agreed to engage Kyle to proceed to Saudi Arabia and upon his arrival at the place of employment to enter into a more formal contract for a period of employment to commence October 6, 1944. The formal contract entered into between Bechtel-McCone and Kyle provided that he should enter into its employ for a period of 18 months; that it would pay him a base salary of $450 per month and would furnish him meals and sleeping accommodations; and that upon the completion of Kyle's services he would depart from the zone of operations and Bechtel-McCone would pay his travel expenses from San Francisco to Saudi Arabia and back to San Francisco.

Kyle was a pipefitter and oil well driller. He proceeded to Saudi Arabia, arriving there prior to Christmas, 1944. He left Saudi Arabia to return to the United States about May 25, 1946, While his contract of employment was for 18 months, he was told that at the end of the contract he could obtain other employment at Saudi Arabia, either with Bechtel-McCone or with oil companies operating in that area. Bechtel-McCone offered him additional employment and tried to persuade him to stay for the additional period. He returned to the United States because he became dissatisfied with a change in personnel of Bechtel-McCone. His purpose in accepting the employment was to earn and save sufficient money to purchase a small stock farm that would provide him with a home and make him secure. He intended to stay in Saudi Arabia for 18 months, and for a further indefinite period. He thought it would take him about three years to earn and save sufficient money to purchase the farm. He did not decide to return to the United States until about May 10, 1946. It is true that in his original application for a passport, which was attended to by Bechtel-McCone, Kyle stated that he intended to return within 18 months. However, on September 17, 1945, he applied for an extension of his passport for a period of 11 months.

While in Saudi Arabia Kyle was located at two different points, Dhahran and Tanura. Bechtel-McCone furnished him board and lodging and he slept in barracks. He was employed in the construction of a refinery at Tanura and a stabilization plant at Dhahran.

From the foregoing it will be seen that Kyle sought employment in a foreign country for the purpose of earning and saving sufficient money to provide him with a home and security. It was a purpose of such a nature that an extended stay would be necessary for its accomplishment. It will be further observed that while he intended ultimately to return to his domicile in the United States, the period of his stay beyond 18 months was indefinite as to time.

In the light of the applicable regulations, the undisputed facts, and the inferences to be drawn from such facts, which were peculiarly for the trial court, I do not think the trial court's finding that Kyle was a bona fide resident of Saudi Arabia during the entire tax year of 1945 was erroneous. Accordingly, I would affirm.

2. Seeley v. Commissioner, 2 Cir., 186 F. 2d 541, 543.

3. Myers v. Commissioner, 4 Cir., 180 F.2d 969, 971; Seeley v. Commissioner, 2 Cir., 186 F.2d 541, 543.

4. Myers v. Commissioner, 4 Cir., 180 F.2d 969, 971; Seeley v. Commissioner, 2 Cir., 186 F.2d 541, 543; Swenson v. Thomas, 5 Cir., 164 F.2d 783, 784.