DONALD H. AND EDWINA C. NELSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68361. Filed August 21, 1958.

*Donald H. Nelson,* pro se.
*Walter I. Auran, Esq.,* for the respondent.

FORRESTER, *Judge:* The Commissioner has determined deficiencies in the income tax of petitioners for their taxable years 1952 and 1953 in the respective amounts of $798.32 and $936.69. The sole issue is whether petitioners were bona fide residents of a foreign country or countries for a period which included an entire taxable year, within the purview of section 116 (a) (1) of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1942.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioners, husband and wife, are citizens of the United States. They filed joint income tax returns for the calendar years 1952 and 1953 with the directors of internal revenue for the districts of Oregon and Washington, respectively. Edwina C. Nelson is a petitioner herein solely by reason of the filing of joint returns, and Donald H. Nelson will sometimes hereinafter be referred to as the petitioner.

Petitioner entered the United States Military Academy at West Point in 1917, and upon graduation undertook a military career. He retired in 1949, and returned to Oregon, the State of his original residence, purchasing a ranch near Corvallis, Oregon, in 1950.

In 1951, petitioner was contacted with respect to a possible position in Ethiopia supervising the installation of a telecommunication system. He was subsequently so employed by the Government of Ethiopia, although no formal written agreement of employment was executed.

Thereafter, and prior to October 30, 1951, petitioner applied to the Department of State for a passport, listing as his United States residence the First National Bank, Junction City, Kansas. His wife also so applied, listing the address of her sister in Portland, Oregon, as her United States residence.

Both passports were issued on October 30, 1951. Petitioner's passport listed as his foreign address the Ethiopian Telecommunication Authority, Ros Hotel, Ethiopia, Africa. On November 7, 1951, petitioner received from the Adjutant General, United States Army, pursuant to his request, permission to reside in Africa and to travel abroad.

Petitioners sold their livestock and equipment, and leased their ranch for an annual money rental. They departed from the United States on November 21, 1951, and shipped their household goods and automobile to Ethiopia.

Petitioner's ultimate goal was Ethiopia. He first went to Paris, France, however, to attend to certain matters connected with the Ethiopian project. He anticipated remaining in France for only a few days and arrived there on November 28, 1951. He encountered unexpected delays and difficulties in accomplishing his objectives, and was for that reason repeatedly delayed from continuing on to Ethiopia.

During their stay in France, petitioners lived at a residential hotel in Paris. They also made several trips to other European countries, including one to Germany for purposes both of business and pleasure. They revived some old social contacts and made a number of new ones.

Urgent matters arose in Ethiopia requiring petitioner's presence. On February 28, 1952, although some unfinished matters still remained in France, petitioners left, arriving in Addis Ababa, Ethiopia, on March 2, 1952. They obtained quarters at the Ros Hotel, the only hotel in that city with suitable accommodations, and remained there throughout their stay in Ethiopia.

Petitioner's assignment in Ethiopia was originally intended to be permanent. The estimated term of the telecommunication project was approximately 15 or 20 years. However, unforeseen problems of a nontechnical nature arose, and an impasse was reached in February of 1953, leaving management no choice but to withdraw. Petitioners returned to the United States on March 13, 1953, and established residence near Pasco, Washington.

Petitioner's salary while in Ethiopia in connection with the telecommunication project was paid by the Ethiopian Government.

Petitioners were not bona fide residents of France for any period in 1951 or 1952 and therefore were not bona fide residents of a foreign country or countries for a period including an entire taxable year.

### OPINION.

Section 116 (a) (1) of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1942, provides in part as follows:

SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income * * *

(a) EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—In the case of an individual citizen of the United States, who * * * has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States * * *

Petitioner claims that he qualifies under the above provision of law as to income received in respect of his duties under the telecommunication project, by virtue of being a resident of a foreign country or countries for a period including his entire taxable year 1952. We do not agree.

The question of bona fide residence in a foreign country or countries is by no means novel. Despite the many cases where that issue was involved, however, the question is so peculiarly one of fact that each new case must be decided on the basis of its own unique attendant circumstances. The decided cases are of very little aid. Compare *Fuller* v. *Hofferbert*, 204 F. 2d 592 (C. A. 6); *Robert W. Seeley*, 14 T. C. 175, affirmed in part and reversed in part 186 F. 2d 541 (C. A. 2); *Swenson* v. *Thomas*, 164 F. 2d 783 (C. A. 5); *Fred H. Pierce*, 22 T. C. 493; *Burlin B. Hamer*, 22 T. C. 343; *David E. Rose*, 16 T. C. 232; *Herman Frederick Baehre*, 15 T. C. 236; *Audio Gray Harvey*, 10 T. C. 183; and compare *Charles F. Bouldin*, 8 T. C. 959, with *Jones* v. *Kyle*, 190 F. 2d 353 (C. A. 10), certiorari denied 342 U. S. 886; *Downs* v. *Commissioner*, 166 F. 2d 504 (C. A. 9), affirming 7 T. C. 1053, certiorari denied 334 U. S. 832; *Leigh White*, 22 T. C. 585; *Ernest Rudolf Hertig*, 19 T. C. 109; *C. Francis Weeks*, 16 T. C. 248; *Carl H. Thorsell*, 13 T. C. 909; *William B. Cruise*, 12 T. C. 1059; *Dudley A. Chapin*, 9 T. C. 142; *Ralph Love*, 8 T. C. 400; *Arthur J. H. Johnson*, 7 T. C. 1040. As we said in *Leonard Larsen*, 23 T. C. 599, at 604:

The question is primarily one of fact, and it is not always easy to harmonize the decided cases. * * * [Citations omitted.] Each case must turn upon the particular facts involved.

Cf. *Lois Kaiser Stierhout*, 24 T. C. 483.

We believe that petitioners were bona fide residents of Ethiopia from March 2, 1952, until on or about March 13, 1953 (cf. *Weible* v.

*United States*, 244 F. 2d 158 (C. A. 9)), but that is not enough to bring them within the requirements of the statute which specifies "an uninterrupted period which includes an entire *taxable* year." (Emphasis supplied.)

Petitioners do not contend that they became residents of Ethiopia prior to their arrival in that country on March 2, 1952, and we cannot find in their stay in France the elements of residence required by section 116 (a). They came to France solely to attend to matters preliminary and subordinate to the Ethiopian operation, and expected to remain there for only a few days. Unforeseen problems kept them there longer than anticipated; nonetheless, their stay in Paris was in the nature of a mere stopover, a delay in their movement from the United States to their destination of Addis Ababa. They were mere transients or sojourners in France, and not bona fide residents thereof within the intendment of section 116 (a). They were in France "for a definite purpose which in its nature may be promptly accomplished." See Regs. 118, sec. 39.211-2 (specifically made applicable by Regs. 118, sec. 39.116-1).

The test is not nonresidence in the United States but bona fide residence elsewhere. *Jones* v. *Kyle, supra* at 354. Nor is it a test of *domicile*. Cf. *Downs* v. *Commissioner, supra* at 507.

Moreover, although the regulations provide the same standard or test in determining whether an alien is a resident of the United States and whether a citizen is a resident of a foreign country or countries, it should be remembered that in each instance the burden of proof is upon the taxpayer. Exemptions as well as deductions are matters of legislative grace, and a taxpayer seeking either must show that he comes squarely within the terms of the law conferring the benefit sought. *New Colonial Co.* v. *Helvering*, 292 U. S. 435. Thus, despite the identity of standard or test, it is quite possible that an alien may be found to be a resident of the United States while a citizen may be found not to have been a resident of a foreign country or countries, under very similar facts, the ultimate result in both cases consisting of the denial of a special benefit, i. e., exemption from income tax, not clearly shown to be applicable. Compare *Ceska Cooper*, 15 T. C. 757, with *William B. Cruise, supra.*

The burden of proof is upon petitioners. The record fails to establish that they were bona fide residents of a foreign country or countries for a period which included an entire taxable year. Respondent's determination of deficiencies must accordingly be sustained.

*Decision will be entered for the respondent.*