MARILYN FUGIT, SURVIVING SPOUSE OF RAYMOND FUGIT, DECEASED, AND MARILYN FUGIT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fugit v. Commissioner
Docket No. 8508-72.
United States Tax Court
T.C. Memo 1975-140; 1975 Tax Ct. Memo LEXIS 234; 34 T.C.M. (CCH) 646; T.C.M. (RIA) 750140; May 12, 1975, Filed J. Jay Bullock, for the petitioner. C. Garold Sims, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in the Federal income tax of petitioner for the taxable year ending December 31, 1969 in the amount of $4,661.87. We are asked to decide whether *235 Raymond Fugit was a bona fide resident of Thailand during an entire taxable year for purposes of the exclusion provided by section 911(a)(1) of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Certain facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At all times relevant, Marilyn Fugit (Marilyn) maintained her residence in Salt Lake City, Utah. A joint Federal income tax return was filed by Marilyn with respect to both herself and her deceased husband, Raymond Fugit (Raymond), for the calendar year 1969 with the internal revenue service center at Ogden, Utah. [2]
Raymond died on August 22, 1969, in Thailand when the airplane he was flying crashed; his residence at the time of his death is a matter of controversy in this case. For a period dating from 1952 to December of 1968, Raymond maintained a home with his wife, Marilyn, in Salt Lake City, Utah. One son, Randy, *236 resided with his parents. Raymond was a pilot, who for a time prior to 1968 was employed as such by an air transport company. Believing that employment abroad would be more remunerative than in this country Raymond accepted a position as a pilot in Thailand in 1968. He anticipated earning a sufficient amount of money to return and semi-retire in the United States. On December 1, 1968, Raymond arrived in Bangkok without his wife or child. He proceeded thereafter to the Royal Thai Airbase, [3] situated approximately 15 miles from Nakhon Phanom, Thailand. Raymond was employed at this location, from the time of his arrival to his death, by Federal Systems Division, UNIVAC, working on a classified defense project referred to as "Operation Pave Eagle." By letter dated December 12, 1968, Raymond informed the United States Ambassador to Thailand of his arrival in said country and his intentions as to the length of, and reasons for, his stay therein. The letter provided, in part, as follows: It seems that it might be prudent to advise you that I, a U.S. citizen bey [sic] birth, arrived in Thailand *237 through Bangkok International Airport on December 1, 1968. My stay here in S.E. Asia is for an indefinite, unspecified, and intentionally extended period until a considerable amount of capital can be accumulated, unless employment conditions dictate otherwise. While at the Royal Thai Airbase, Raymond lived in barracks-style quarters; each building or barracks was divided into approximately ten small rooms; each room contained beds to accommodate two to four persons and a refrigerator for their convenience. A small rental fee was required for the use of these quarters for which Raymond was reimbursed by UNIVAC. While in Thailand Raymond corresponded with Marilyn. The letters indicate that he gave some thought to his family joining him in Thailand. The last letter in the record in this regard bears the date February 19, 1969. On their joint Federal income tax return filed for the calendar year 1969 Marilyn excluded the amount Raymond had earned prior to his death while employed in Thailand. By statutory notice, dated October 19, 1972, respondent increased the petitioner's taxable income by the excluded amount. OPINION We are asked to decide whether, for purposes of section *238 911(a)(1), [4] Raymond was a bona fide resident of Thailand "for an uninterrupted period which includes an entire taxable year". Bona fide residence is a question of fact; each case to be decided in light of its particular circumstances. Jose V. Ferrer,50 T.C. 177, 182 (1968), affd. per curiam 409 F.2d 1359 *239 (2d Cir., 1969); Donald H. Nelson,30 T.C. 1151, 1153 (1958). The burden of proof is on petitioner. The factors relevant to the issue have been rehearsed on numerous occasions and need not be repeated here. See Sochurek v. Commissioner,300 F.2d 34, 38 (7th Cir., 1962) revg. 36 T.C. 131 (1961); Donald F. Dawson,59 T.C. 264 (1972); see also section 1.911-1(a)(2), Income Tax Regs., indicating that reference should be made to section 1.871-2(b). [5]
*240 Among those factors, Raymond's intentions in regard to his stay in Thailand are of primary import. Section 1.871-2(b), Income Tax Regs.; Richard W. Benfer,45 T.C. 277 (1965); Lois Kaiser Stierhout,24 T.C. 483 (1955); Sochurek v. Commissioner,supra. In the letter dated February 19, 1969, Raymond expressed a desire to have his family join him in Thailand; but there is no evidence in the record indicating that he continued to be of such a mind. Nor is there evidence of positive action on the part of Raymond to bring about the relocation of his family. See Sochurek v. Commissioner,supra.Under the circumstances, such further evidence would be required for us to find Raymond to have been a bona fide resident of Thailand from January 1, 1969 to the date of his death on August 22, 1969. Additionally we note that Raymond lived on a military base during the time period in question here. His quarters consisted of barracks-style sleeping rooms shared with fellow employees. Ernest Rudolf Hertig,19 T.C. 109 (1952); Joseph A. McCurnin,30 T.C. 143 (1958). Moreover, no evidence *241 has been presented to indicate that Raymond took part in any local activities while in Thailand. Sochurek v. Commissioner,supra;Lois Kaiser Stierhout,supra.
Accordingly, we hold that petitioner has failed to sustain her burden of proof on the issue of residence. In light of that holding we need not reach the question of whether a "short taxable year" is "an entire taxable year" within the meaning of section 911(a)(1). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable years in issue.↩
2. The joint return was filed in compliance with sec. 6013.↩
3. The Royal Thai Airbase was owned and operated by the government of Thailand.↩
4. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule.--The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona fide resident of foreign country.--In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).↩
5. Sec. 1.871-2 Determining residence of alien individuals. (b) Residence defined.↩ An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.