Hopper v. State, No. 509-9-04 Wncv  (Katz, J., May 16, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                                    SUPERIOR COURT
Washington County, ss.:                           Docket No. 509-9-04 Wncv


HOPPER

v.

STATE OF VERMONT


ENTRY


Taxpayers appealed, pursuant to 32 V.S.A. § 5885, from a determination of the Commissioner of Taxes upholding an assessment of 1999 personal income taxes.  Taxpayers object to any liability for Vermont income tax for that year because they lived and were employed exclusively in Saudi Arabia then.

Taxpayers argue, essentially, that the State of Vermont must treat them for state income tax purposes as bone fide residents of a foreign country because they qualified as such for federal income tax purposes under 26 U.S.C. § 911.  Generally, section 911 allows a citizen of the United States to exclude foreign income from gross income for tax purposes.  The basic purpose of the exemption originally was to stimulate foreign trade by decreasing the tax disadvantages of United States citizens

working abroad.  Carey v. United States, 427 F.2d 763, 767 (Ct. Cl. 1970).
To qualify, one must sufficiently demonstrate foreign residency.  "We point
out that there is no question as to the power of the United States to tax
[foreign] income earned by [an American citizen residing in a foreign
country].  The exemption statute is thus a pure matter of legislative
grace . . . ." Commissioner of Internal Revenue v. Swent, 155 F.2d 513, 517
(4th Cir. 1946).

Vermont taxes the "Vermont income" of "resident individuals."  32
V.S.A. § 5823(a).  Contrary to Taxpayers' interpretation, "Vermont
income" does not exclude all income arising from non-Vermont sources.
Rather, "Vermont income" is defined by statute to mean federal adjusted
gross income less certain express deductions.  See id.  Section 5822, relied
upon by Taxpayers, does not define "Vermont income"; it merely sets out
the basic scheme of computing Vermont income tax as a largely fixed
portion of federal income tax.  A "resident individual" is an individual
"qualifying for residency in this state during the entirety of that taxable
year."  Id. § 5811(13).  "Residency" means, among other things, domicile.
Id. § 5811(11)(A)(i).  Hence, Taxpayers are liable for the Vermont resident
income tax in 1999 if they were domiciled in Vermont that year.

Even if the State of Vermont were required to treat Taxpayers as
bona fide residents of Saudi Arabia in 1999, doing so would have no effect
on their state income tax obligation.  The federal statute merely carves out a
large deduction from gross income for federal income tax purposes based
on residence, not domicile.  Meyers v. Commissioner of Internal Revenue,
180 F.2d 969, 971 (4th Cir. 1950).  The obligation to pay Vermont income
tax arises out of domicile, not residence.  Domicile and residence are
distinct concepts.

> As "domicile" and "residence" are usually in the same place,
> they are frequently used, even in our statutes, as if they had
> the same meaning, but they are not identical terms, for a
> person may have two places of "residence" as in the city and
> country, but only one "domicile."  "Residence" means living

> in a particular locality, but "domicile" means living in that
> locality with intent to make it a fixed and permanent home.
> "Residence" simply requires bodily presence as an inhabitant
> in a given place, while "domicile" requires bodily presence in
> that place and also an intention to make it one's domicile.

Swent, 155 F.2d at 515 (quoting Matter of Newcomb's Estate, 84 N.E. 950, 954 (NY 1908)), quoted in Meyers, 180 F.2d at 971.  Thus, being a resident of Saudi Arabia does not necessarily affect a determination of domicile in Vermont.

Taxpayers were domiciled in Vermont in 1999.  In a previous case of Taxpayers, featuring essentially the same facts as this case but a different tax year, Taxpayers' domicile was litigated and determined on the merits to be in Vermont.  Taxpayers did not appeal from that determination.  The hearing officer in this case considered domicile established by operation of collateral estoppel.  Taxpayers have not directly challenged the amply supported conclusion of domicile.  Rather, they suggest that collateral estoppel should not apply in the administrative setting and, in any event, its application here is unfair.  However, collateral estoppel does apply in administrative proceedings.  See In re Tariff Filing of Cent. State Pub. Serv. Corp., 172 Vt. 14, 21 (2001).  Taxpayers claim applying the doctrine here is unfair because they are unsophisticated and unrepresented litigants.  While fairness is an element of collateral estoppel, Taxpayers have failed to make any showing that their lack of sophistication bore any relation whatsoever to the determination of domicile.  Indeed, the relative informality of administrative proceedings undercuts their argument that binding them with the earlier factual finding is somehow unfair.  Further, they make no showing that litigating domicile a second time possibly could lead to a different result.  We perceive no unfairness and therefore hold taxpayers bound by that earlier, supported finding of domicile.

Consequently, as Vermont domiciliaries in 1999, Taxpayers are subject to the Vermont income tax for that year as Vermont "residents" pursuant to 32 V.S.A. § 5823(a).

3

Taxpayers also argue that they should not be responsible for any interest or penalties for not timely paying their 1999 taxes because they did so in reliance on the incorrect advice of an employee of the Department. Taxpayers litigated this issue, like domicile, unsuccessfully in their first case. We see no error in the hearing officer's conclusion that this issue was decided with finality then. Moreover, while equitable estoppel can be applied against a governmental entity, My Sister's Place v. Burlington, 139 Vt. 602, 609 (1981), generally it will be done only in extraordinary circumstances, In re McDonalds Corp., 146 Vt. 380, 383 (1985). We perceive no extraordinary circumstances here.

Lastly, Taxpayers argue that their motion for a default judgment should have been granted. After actually being advised of a scheduling change for their hearing, Taxpayers nevertheless appeared at the originally scheduled time because they had not received written notice of the scheduling change; written notice for the new time subsequently was issued. See generally 3 V.S.A. § 809 for applicable notice requirements. They demanded default, which was denied, against the State on that basis alone, arguing, as they do here, that turnabout is fair play: the State would have held them in default if they had failed to appear. At the outset, we note that a defect in the form of notice of a hearing is not the same thing as intentionally refusing to attend upon receipt of actual notice. In any event, "For notice to be adequate, it is enough 'that the parties be sufficiently apprised of the nature of the proceedings so that there is no unfair surprise.'" In re Vt. Health Service Corp., 155 Vt. 457, 460 (1990) (quoting North State Telephone Co. v. Alaska Public Utilities Commission, 522 P.2d 711, 714 (Alaska 1974)); see also 3 V.S.A. § 809(a) (requiring "reasonable" notice). Though we do not believe their remedy would be default anyway, we note that Taxpayers have not even attempted – considering they had actual notice all along – to argue that they were unfairly surprised. There are two final considerations: (1) The law favors resolution of controversies on their merits, rather than by default, unless the latter is clearly required; and (2) The State is absolved of the risk of default. Rule 55(e), V.R.C.P. There was no error in denying default.

4

The Determination of the Commissioner of Taxes is affirmed.

Dated at Montpelier, Vermont, _____, 20___.


_____

Judge