John J. Scheuren, Jr., * Margaret B. Scheuren v. Commissioner. Scheuren v. Commissioner
Docket Nos. 75153, 84937.
United States Tax Court
T.C. Memo 1961-52; 1961 Tax Ct. Memo LEXIS 298; 20 T.C.M. (CCH) 289; T.C.M. (RIA) 61052; February 27, 1961
*298 Taxpayer performed services in Greenland under an off-continent employment contract that also contemplated some duties in the United States. His domicile was in Massachusetts where his wife and family lived. During two of the three years taxpayer spent over half of his time in the United States. In the other year he spent about 48 percent of his time in the United States. Held, taxpayer was not a resident of Greenland within the meaning of section 911(a)(1), Internal Revenue Code of 1954, during any of the three years. Richard G. Maloney, Esq., for the petitioners. J. Frost Walker, Jr., Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' income taxes of $1,491.20 in 1954, $3,609.67 in 1955 and $2,916.50 in 1956. The sole question for decision is whether petitioner John J. Scheuren, Jr. was a bona fide resident of Greenland during the taxable years 1954, 1955 and 1956 so that his income is exempt from taxation within the meaning of section 911(a)(1) of the Internal Revenue Code of 1954. [1]
Findings of Fact Some *299 of the facts have been stipulated. They are found accordingly. Petitioners John J. Scheuren, Jr. and Margaret B. Scheuren are husband and wife. They filed joint income tax returns with the district director of internal revenue for the district of Massachusetts for the years 1954, 1955 and 1956. Margaret B. Scheuren is a party here only by virtue of having filed a joint return. We will therefore hereafter refer to John as petitioner. Petitioner is an engineer. He gradlated from the Massachusetts Institute of Technology in 1931 and was thereafter employed in a number of engineering and construction projects, generally in the northeastern part of the United States. In April 1952 petitioner was employed by Metcalf & Eddy and Alfred Hopkins & Associates, hereafter sometimes called Metcalf, as assistant field manager of their overseas operations in Greenland. During the years 1954 through 1956 petitioner was employed as offshore manager for the same firm under a written contract of employment dated December 20, 1953 and an addendum thereto dated September 14, 1955. The agreement recites that petitioner was engaged pursuant to a contract between Metcalf and the United States Army Corps of *300 Engineers for the performance of certain offshore engineering and architectural work. It stated that the term of the employment agreement was to be the period during which the services of the employee were required. It also provided, in part, as follows: SECTION 3. WAGES. (a) The Employee is employed at the basic wage rate specified above, payable by check or by United States currency to such bank and/or individual as the Employee may designate in writing. * * *
(c) The Employee is guaranteed that he will be paid for not less than 7 ten-hour days of work, at the hourly rate and overtime fixed herein, for each full work week during the time he is actually at the job site * * * (d) If the Employee is required by the Contractor to return to the United States for temporary duty for the benefit of the Government during the life of this Agreement, he shall do so. His maximum compensation for such temporary duty shall be at the rate of (8) eight hours per day, with a maximum of (40) forty hours per week, at his overseas wage rate. * * *
SECTION 4. OVERTIME AND HOLIDAY PAYMENTS. (a) * * * All work required by the Contractor and performed in excess of forty (40) hours per week * * * will be paid *301 for at one and one-half (1 1/2) times the hourly wage rate * * *. SECTION 5. TRAVEL PAY. * * *
(2) Travel pay shall commence as of the date the Employee departs for the job site and shall end on the day the Employee arrives at the job site. * * *
(4) Travel pay shall commence on the day the Employee leaves the job site and shall end on the estimated arrival date of his Point of Hire * * *
(9) In the event the Employee shall, during the term of this Agreement travel from one site of work to another, at the direction of the Contractor, he shall be paid pursuant to the terms of Section 3(c). SECTION 6. TRANSPORTATION. (a) * * * the Contractor shall reimburse transportation costs from the Point of Hire in the United States to the job site and, upon completion of service * * * return to the Point of Hire. * * * (b) Subsistence. The Contractor will pay for the transportation * * * and will allow the rate of nine dollars ($9.00) per day for subsistence within the continental limits of the United States * * * for each day during which the Employee is in travel status * * * SECTION 7. JOB SITE FACILITIES. (a) Board, lodging, laundry and dry cleaning when available, social services, and such *302 hospitalization, medical services, and temporary dental care as in the opinion of the Contractor may be desirable to keep the Employee in condition to render proper services, will be furnished * * * at the job site * * * at a charge of Five Dollars and Seventy-Five Cents ($5.75) per day. * * * (b) The Employee agrees that no claim shall arise against the Contractor for the adequacy of job-site facilities furnished hereunder, it being recognized by the Employee that conditions at the job site are unusual * * * Petitioner's wage rate under this contract was $8.50 per hour. The addendum of September 14, 1955, among other things, deleted section 7, above, and added the following in lieu thereof: Employee shall assume all responsibility for obtaining and paying for all board, lodging, laundry, dry cleaning, social services, hospitalization, medical services and dental care * * *. As offshore manager, petitioner was in charge of all the overseas operations in Greenland for his employer. His duties consisted of overseeing reconnaisance for the selection of sites for airfields or radar installations and for developing or expanding old sites. He sent the data gathered back to the United States *303 for the preparation of designs, and supervised contractors' operations under the designs finally arrived at. He worked with the United States Corps of Engineers and the Air Force, with Danish technicians and engineers, and with weapons contractors, advising them as to the engineering feasibility of locating air fields and radar installations at various sites in Greenland. During the years in question petitioner supervised projects at such places in Greenland as Ikatek, Kulusuk, Kangk, Angmags-salik, Simiutak, Narsarssuak and Itivitleg. In connection with these projects petitioner traveled between Greenland and the United States for the purposes of consulting with the Corps of Engineers or personnel of Metcalf about designs for Greenland installations, to conduct interviews with and select personnel for employment by Metcalf in Greenland, and for vacations. He was also on one occasion required to come to the United States to assist in a court case involving Metcalf. The following stipulated schedule shows petitioner's departures from and arrivals in the United States during the years in question: Left
Arrived
Left
Arrived
U.S.A.
U.S.A.
U.S.A.
U.S.A.
1/22/54
2/ 2/54
8/ 6/55
9/ 6/55
3/10/54
3/20/54
9/15/55
10/ 2/55
6/ 1/54
6/12/54
11/ 4/55
12/19/55
6/25/54
7/11/54
2/ 2/56
2/21/56
7/30/54
8/ 6/54
3/14/56
3/18/56
9/27/54
10/17/54
4/26/56
5/29/56
10/21/54
10/29/54
6/22/56
7/16/56
11/ 1/54
12/19/54
8/16/56
9/ 1/56
1/16/55
2/ 8/55
9/ 7/56
11/ 5/56
3/22/55
4/26/55
11/25/56
12/ 2/56
*304 The number of days spent by the petitioner in the United States and Greenland during the tax years involved were as follows: United States
Greenland [2]
Year
Days
Per Cent
Days
Per Cent
1954
233
63.8
132
36.2
1955
176
48.2
189
51.8
1956
204
55.6
162
44.4 While in Greenland petitioner worked about a 10 hour day, seven days a week. He was paid at the rate of $8.50 per hour for the first 40 hours and at one and one-half times the hourly rate ($12.75) for work in excess of 40 hours. While in the United States petitioner worked an average of five days a week and was paid at the rate of $50 a day.Travel expenses incurred by the petitioner within the United States were reimbursed by Metcalf. While in Greenland, petitioner paid his own expenses for meals and lodging. When he first arrived in Greenland in 1952 he lived in a hut with canvas walls. In 1954 he moved into a permanent building in which he had a room with a connecting bath. In Greenland, petitioner's main headquarters were in Sondretstrom. When working at outlying *305 sites, petitioner would stay in temporary huts or in a tent and would pay the person providing the quarters for the facilities so occupied. Such facilities were usually provided by either the construction contractor or by the United States government. In Sondretstrom petitioner ate at the contractor's mess, at the local officers' club, or at the commercial hotel located there. He paid for his own meals at these places. During his stay in Greenland petitioner became acquainted with some of the Danish population and with some of the native Greenlanders. Socially, he exchanged dinner invitations, played bridge, went on mountain climbing expeditions and had cocktails with them. Professionally, he dealt with the residents to gather technical information, exchange views on procedures and for purposes of radio communication. Petitioner has a limited knowledge of the Danish and Greenlander languages. When petitioner was first employed by Metcalf in 1952 he thought he would be engaged in activity in Greenland about a year and a half. However, before the end of 1953 it appeared that the job might last until 1956. In 1956 it appeared that the job would last for several more years. Petitioner *306 was still working in Greenland at the time of the hearing of this case. Petitioner and his wife have five children. The oldest was less than 16 years of age during any of the taxable years in question. In 1946 petitioner bought a house and lot in Elmwood, Massachusetts. In 1955 he sold that house and purchased another in Cohasset, Massachusetts. Petitioner's wife and children resided in these houses during all of the years petitioner worked in Greenland. On several occasions during the years in question petitioner investigated the possibility of bringing his wife and children to Greenland to live. In 1952 he considered moving his family to Narsarssuak, but decided against it because of the poor weather conditions there. Later, he investigated the possibility of bringing them to Thule in northern Greenland, but decided not to because of the three months of winter darkness in that region. In 1956 he had the opportunity to take quarters for his family at Angmagssauk. He decided against it because to get his family there it would have been necessary for them to fly to Iceland and from Iceland to Culusuk, Greenland, and from Culusuk to have taken a boat or a dog team or both to Angmagssauk. *307 He considered the expense of this journey for his family of six to be prohibitive. Metcalf paid petitioner a salary of $19,425.99 in 1954, $24,987.99 in 1955 and $23,235 in 1956. From these amounts Metcalf withheld $2,295.48 in 1954, $3,297.18 in 1955 and $2,987.42 in 1956. On his income tax returns for those three years petitioner claimed the amounts withheld as overpayments of income tax and for the years 1954, 1955 and 1956 he claimed travel expense deductions of $2,100, $1,840 and $1,680, respectively. Respondent, in the statutory notice for the years 1954 and 1955 [3] stated: It has been determined that [petitioner] was not a bona fide resident of Greenland during the taxable years 1954 and 1955 and, therefore, income received in such years from [his employer] is not exempt from United States income tax under the provisions of Section 911(a)(1) of the Internal Revenue Code of 1954 but is includible in taxable income under the provisions of Section 61 of the Internal Revenue Code of 1954. It has been further determined that [petitioner] during the taxable years 1954 and 1955 did not meet the requirements set forth in Section 911(a)(2) of the Internal Revenue Code of 1954 and, therefore, *308 is not entitled to the exclusion in such years provided for in such Section. Respondent allowed travel expense deductions of $1,631 and $1,239 for the years 1954 and 1955, respectively, and explained such deductions were allowed for "Expenses away from Greenland." Opinion The sole question in this case is whether petitioner was a bona fide resident of Greenland during the years in question within the meaning of section 911. Section 911 exempts from tax amounts of earned income from sources without the United States of a "citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year." Petitioner's entire argument is that he was a bona fide resident of Greenland as defined by the regulations under this statute. Section 1.911-1(a) (2), Income Tax Regs. states that whether petitioner was a bona fide resident of a foreign country shall be determined, to the extent feasible, under the principles set forth in section 871 and the regulations *309 thereunder. Section 871 has to do with the income tax of nonresident aliens and section 1.871-2(b) [4] *310 , Income Tax Regs., is the applicable regulation thereunder. When we adapt respondent's last cited Regulation to section 911 we find the question of whether or not a taxpayer is a transient is to be determined by his intent with regard to the length and the nature of his stay in the foreign country. If he lived in Greenland and had no definite intent at all as to his stay, he would, under the Regulation, be considered to have been a resident. If he went to Greenland for a definite purpose, which, by its nature could have been promptly accomplished, he would not be a resident as the term is defined in the Regulation. But if the purpose of his stay in Greenland was of such a nature that an extended stay there was necessary for its accomplishment, and because of that he made his home there temporarily, he would be a resident of Greenland within the meaning of the Regulation. We have said in Donald H. Nelson, 30 T.C. 1151, this "question is so peculiarly one of fact that each new case must be decided on the basis of its *311 own unique attendant circumstances. The decided cases are of very little aid." Petitioner argues that he comes directly within the language of section 1.871-2(b), supra. On brief he states that the Regulation requires that he - either (1) went there to live without having any definite intention as to the length of his stay; or (2) went there for a definite purpose which by its nature might require an extended stay, and so actually made his home there * * *. Petitioner then argues that he went to Greenland in 1952 under a contract which he estimated would be completed in a year and a half; that by the end of 1953 he knew he would be in Greenland for two or three more years; and that he intended at all times to remain there until the completion of his employer's projects. From this petitioner concludes that he was in Greenland "for a purpose which by its very nature required an extended stay for its accomplishment" and is, therefore, within the Regulation. Section 1.871-2(b) first defines a resident as one who is not a transient or a sojourner. Whether or not a person is a transient is determined by his "intentions with regard to the length and nature of his stay." What was petitioner's *312 intent as to the length and nature of his stay in Greenland? We can only judge by the record of the contract and what petitioner actually did in the performance of it during the years in question. Petitioner must not have intended to stay in Greenland continuously. He testified that it was his intention to stay in Greenland until the job with Metcalf was finished and he testified that when he first went to Greenland he thought that the work would take about a year and a half; that the work then in process was completed within the year and a half but new work was added which would take two to three years more to complete; and then later in 1956 more work was added which would require at least three years more to complete. The employment contract, styled an "Offcontinent Employment Agreement", was in force from 1953 on and called for no definite term or period of employment but merely stated it was to continue for a term for which petitioner's services were required. It is significant, in the light of the stipulation here, that it contemplated employment of petitioner in Greenland and in the United States. While we do not know the amount of time petitioner spent in Greenland in the *313 first two years of the contract, we do know that in the next three year period, or the years in question, he was mostly in the United States. Our findings of fact show that petitioner spent about 63.8 percent of the days of 1954 in the United States. In 1955 he spent about 48.2 percent of the time in the United States and in 1956 about 55.6 percent. In addition, the stipulation of facts shows that during 1954 petitioner's longest absence from the United States was 48 days and his longest continuous presence in the United States was 73 days. Also in the same year he was present in the United States on nine occasions, only two of which were for less than a week. In 1955 petitioner's longest absence from the United States was 45 days, his longest presence in the United States was 42 days and he was present here on seven occasions, none of which were for less than a week. During 1956 petitioner's longest absence from the United States was 59 days, his longest presence was 39 days, and he was present here on eight occasions, only one of which was for less than a week. Since the employment contract called for services in Greenland and the United States it must be assumed petitioner's intention *314 was to stay part of the time in each country. When we find the more extended stay in two of the three years involved was actually in the United States and in the other year his United States' stay was 48.2 percent of the time, we can only conclude his intention was to have a transient stay in Greenland. Petitioner argues that Fred H. Pierce, 22 T.C. 493, and Swenson v. Thomas, 164 F. 2d 783, should control here. In the Pierce case it appears from the opinion that the taxpayer was continuously present in Iceland during the entire year for which his residency there was upheld. In the Swenson case, the Court said "there can be no doubt that his continuous and unbroken living there [Columbia, South America] for four years * * *" constituted residence. On this basis alone these cases are distinguishable. Petitioner, in explanation of his many trips to the United States, argues that in the years 1952 and 1953 he established residence in Greenland and that this residence continued during the years 1954, 1955 and 1956, which are here in question, citing Regulations, section 1.911-1(a)(2), which provides, in part, "once bona fide residence in a foreign country * * * has been established, temporary *315 visits to the United States or elsewhere on vacation or business trips will not necessarily deprive the citizen of his status as a bona fide resident of a foreign country." Petitioner's evidence does not establish that he became a bona fide resident of Greenland in either 1952 or 1953. The record does not show the amount of time he spent in Greenland in those years. This is a vital element in showing his intent to become a resident of that place. Without knowing whether he spent little or much time there in 1952 and 1953 we are unable to find that he was a resident of Greenland in any year prior to 1954, so that it could be said such residence "continued" during the years in question. Petitioner had the burden to show that he was, in fact, a resident of Greenland during the years in question. We hold he has not sustained his burden. Petitioner also points out that respondent has, in effect, considered Greenland petitioner's tax "home" for purposes of deducting travel expenses. This argument has no force. These are separate items of adjustment governed by different Code sections and differing concepts. See, e.g., Arthur J. H. Johnson, 7 T.C. 1040. Petitioner has proved he intended *316 to work in Greenland during the years in question. He has not proved he intended to reside there. We hold petitioner was not a bona fide resident of Greenland for any of the years in question. Decisions will be entered under Rule 50. Footnotes
*. Petitioners' names appear variously in the record of this case as Scheuren or Scheurin.↩
1. All section references herein are to the Internal Revenue Code of 1954, as amended.↩
2. The stipulation contains only the dates of departure from or arrival in the United States. There is no showing as to travel time which would conceivably decrease the number of days in Greenland.↩
3. The statutory notice for the year 1956 does not appear in the record of this case.↩
4. Reg. § 1.871-2. Determining residence of alien individuals. * * *
(b) Residence defined. - An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United Statesfor purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence or exceptional circumstances.