T.C. Memo. 2016-223

UNITED STATES TAX COURT

COMMUNITY EDUCATION FOUNDATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 920-14X.            Filed December 12, 2016.

D. Dante Anthony Hayes (an officer), for petitioner.

<u>Elizabeth C. Mourges</u>, for respondent.

MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  Respondent determined that petitioner,

Community Education Foundation, no longer qualifies for exemption from Federal

income tax under section 501(a) as an organization meeting the requirements of

[*2] section 501(c)(3).[1]  Respondent therefore revoked petitioner's tax-exempt status effective January 1, 2008.  Petitioner challenged respondent's determination by timely filing a petition with the Court for a declaratory judgment pursuant to section 7428(a).  The sole issue to be decided is whether petitioner operates exclusively for charitable purposes within the meaning of section 501(c)(3).

## Background

The parties submitted to the Court the administrative record upon which respondent made the final adverse determination.  The parties agree that the administrative record is complete and genuine.  For purposes of this proceeding, the facts and representations in the administrative record, as well as those in the stipulation filed February 6, 2015, are accepted as true and are incorporated herein by this reference.

Petitioner was organized as a nonprofit corporation under the laws of the District of Columbia on January 10, 2001.  Petitioner was incorporated as ABF Educational Foundation, Inc., but since its incorporation has operated under the names Congressional Education Foundation, Congressional Education Foundation for Public Policy, and most recently Community Education Foundation.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** Petitioner's principal office or agency was in Baltimore, Maryland, at the time that its petition was filed with the Court. Petitioner's sole officer, director, and representative is D. Dante Anthony Hayes.

According to its articles of incorporation petitioner is "organized exclusively for charitable and educational purposes within the meaning of §501(c)(3) of the Internal Revenue Code of 1986".

On or about June 27, 2001, Mr. Hayes submitted Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (application). On the application Mr. Hayes stated:

> The ABF Educational Foundation, Inc. (the "Foundation") is a conservative research and educational institute focusing on public policy issues that have particular impact on African Americans, Hispanic Americans, Asian Americans, Native Americans, and heritage groups (the "Target Groups"). The Foundation's guiding principle is to encourage open inquiry about public policy issues that are of particular interest and educational value for the Target Groups and the public in general and to provide programs that highlight and educate the Target Groups and the public about these germane subjects and/or public policy issues.

> *     *     *     *     *     *     *

> To achieve this goal, the Foundation will undertake a variety of activities, including:

> 1. Town hall meetings: The Foundation will sponsor a minimum of twenty televised or non-televised town hall meetings on university campuses across the United States to the general public, particularly

**[*4]** minorities in the education profession, health care profession, legal profession, business and civic leaders, religious leaders, labor union members, college and university students.  Each town hall meeting will discuss the reformation of tax, education, social security, health care, racial profiling, business and economic development.  The purpose of these town hall meetings is to help the American public, particularly minorities, have a better understanding of conservative public policy initiatives.  The Foundation's staff and consultants will work to develop and conduct these monthly town hall meetings that are scheduled to start in September 2001.  This activity will account for roughly 25 percent of the Foundation's resources and time in any given year.

2.  National workshops:  The Foundation will sponsor twenty national workshops in highschool auditoriums, college campuses, convention centers, church auditoriums and hotels across the United States * * *.  The Foundation's staff and consultants will work to develop and organize these national workshops that are scheduled to start in October 2001.  This activity will account for roughly 55 percent of the Foundation's resources and time in any given year.

3.  Congressional forums:  The Foundation will sponsor quarterly educational forums for public officials, non-profits, opinion pollsters, business leaders and the media to better understand minorities and their perception on certain public policy initiatives that impact their daily lives.  The Foundation's staff will work to develop and organize these congressional forums that are scheduled to start in November 2001.  This activity will account for roughly 10 percent of the Foundation's resources and time in any given year.

4.  Media/Communication:  As part of the Foundation's efforts to raise awareness and understanding of the conservative public policy initiatives to the minorities and the general public, the Foundation will communicate these policy initiatives across the country via billboards, radio, televisions, etc.  The Foundation staff and consultants will work to develop the messages to be advertised.  This

**[*5]** activity will account for roughly 10 percent of the Foundation's resources and time in any given year.

Petitioner did not, over time, meaningfully organize or allocate resources to any of the four aforementioned and enumerated activities.

On July 23, 2001, respondent granted petitioner tax-exempt status under section 501(c)(3) and private foundation status under sections 509(a)(1) and 170(b)(1)(A)(vi).

On September 21, 2012, respondent issued to petitioner a letter proposing to revoke petitioner's tax-exempt status under section 501(c)(3), as well as a copy of a report reflecting the reasoning behind the proposed revocation, which was based on, inter alia, its failure "to establish that it meets operational test requirements under IRC 501(c)(3)".[2] The letter stated that if petitioner disagreed with the findings it should submit a written protest.

On October 19, 2012, petitioner timely sent a written protest (protest) to the Internal Revenue Service Appeals Office. In the protest, petitioner admitted that it was inactive from September 2001 through December 2008; however, it asserted

---

[2] See infra pp. 9-10 for a discussion of the operational test.

The letter stated that "based on CEF's [Community Education Foundation's] and Mr. Hayes' continued failures (including failing to respond to summons) to provide any meaningful evidence of it having conducted any charitable activities CEF has failed to establish that it meets the operational test requirements under IRC 501(c)(3)."

[*6] that it tried, but failed, to host various events in 2009 and 2010. Thus, according to petitioner, it attempted to organize a "Presidential Inaugural Ball" to honor veterans (Veterans' Inaugural Ball) in 2009, as well as a series of town hall meetings and benefit concerts in 2010, generally oriented towards veterans.[3]

On October 22, 2013, respondent issued to petitioner a final adverse determination revoking its section 501(c)(3) status effective January 1, 2008. Respondent determined that petitioner: (1) failed to establish that it was operated exclusively for exempt purposes under section 501(c)(3) and section 1.501(c)(3)-1(d), Income Tax Regs.; (2) failed to maintain or produce any books

---

[3] The circumstances surrounding the organization of such contemplated events are less than clear although the administrative record as stipulated by the parties includes a March 16, 2010, article in the Army Times stating that "sponsors, entertainers and ticketholders [were left] in the lurch" when the Veterans' Inaugural Ball was not held. The article further stated that the Baltimore, Maryland, Department of Recreation and Parks did not have a permit request regarding petitioner's promotion of a "star studded benefit concert" at Carroll Park in Baltimore, nor were the featured entertainers officially scheduled to perform at any such concert.

According to petitioner's version of the events, the Veterans' Inaugural Ball fell through because Mr. Hayes found his cosponsor to be misleading and other unnamed cosponsors "could not get past the fact that" (1) "we were all Republicans, supported President George W. Bush, and the war in Afghanistan and Iraqi [sic]" and (2) the "CEF [Community Education Foundation] former President * * * was indicted in Colorado on issues relating to money and the Kuwaiti Government". With respect to petitioner's contemplated events for 2010, it contends that it was not able to find corporate sponsors for those events because of an unflattering article in the Washington Post, as well as the March 16, 2010, article in the Army Times.

**[\*7]** or records setting forth its revenue, expenses, assets, and activities or programs; and (3) admitted to a significant period of inactivity and failed to demonstrate that it engaged in activities furthering purposes described in section 501(c)(3). In a companion final adverse determination also dated October 22, 2013, respondent modified petitioner's private foundation status "from classification as a [tax-exempt] public charity to classification as a [taxable] private foundation effective January 1, 2008".

On January 15, 2014, petitioner commenced the instant case by filing a petition for a declaratory judgment. See sec. 7428. Since then, petitioner has not always been fully engaged with this case or responsive to the Court's orders. Most recently, after this case was submitted on the basis of the administrative record, petitioner did not file a brief as directed by the Court.[4]

---

[4] When a party fails to file a brief altogether, such a failure has been held by this Court to justify the dismissal of all issues as to which the nonfiling party has the burden of proof. See Rule 123; Stringer v. Commissioner, 84 T.C. 693 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986). Nevertheless, we choose to exercise our discretion not to do so here and instead proceed on the merits.

**[*8]** <u>Discussion</u>

A. <u>Declaratory Judgment</u>

In a declaratory judgment action brought under section 7428, the organization bears the burden of proving that it is a section 501(c)(3) organization. <u>See</u> Rule 142; <u>Rameses Sch. of San Antonio, Tex. v. Commissioner</u>, T.C. Memo. 2007-85. Disposition of an action for declaratory judgment involving revocation may be made on the basis of the administrative record where the parties agree that the record includes all the relevant facts and that those facts are not in dispute. <u>See</u> Rule 217(a).[5] The parties agree that the record includes all relevant facts and that those facts are not in dispute.

B. <u>Whether Petitioner Is Entitled To Exempt Status</u>

Tax exemption is a matter of legislative grace, and an organization seeking an exemption must prove that it "comes squarely within the terms of the law conferring the benefit sought." <u>Nelson v. Commissioner</u>, 30 T.C. 1151, 1154

----

[5] In <u>Partners in Charity, Inc. v. Commissioner</u>, 141 T.C. 151, 163 (2013), the Court stated that an abuse of discretion standard applies when reviewing the retroactivity of a revocation. <u>See also</u> <u>Capital Gymnastics Booster Club, Inc. v. Commissioner</u>, T.C. Memo. 2013-193, at *16 n.7. Nevertheless, in <u>Partners in Charity, Inc. v. Commissioner</u>, 141 T.C. at 162, the Court noted that the parties implicitly tried the case under a de novo standard of review and proceeded accordingly. Similarly, in the instant case the parties implicitly proceeded under a de novo standard of review.

**[*9]** (1958); see also Fla. Hosp. Tr. Fund v. Commissioner, 103 T.C. 140 (1994), aff'd, 71 F.3d 808 (11th Cir. 1996).

Generally speaking, an organization described in section 501(c)(3) shall be exempt from Federal income tax.  Sec. 501(a).  To qualify as an exempt organization under section 501(c)(3), an organization must satisfy all of the requirements stated therein, specifically including the requirements that the corporation be both organized and operated exclusively for one or more exempt purposes and that no part of the net earnings inure to the benefit of any private shareholder or individual.  A failure to satisfy any one of the requirements is fatal to qualification and to continued entitlement to exempt status.  Columbia Park & Recreation Ass'n, Inc. v. Commissioner, 88 T.C. 1, 13 (1987), aff'd without published opinion, 838 F.2d 465 (4th Cir. 1988); see sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.

The parties dispute whether petitioner is operated exclusively for charitable purposes (operational test).  See sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.  An organization will satisfy the operational test if it engages primarily in activities that accomplish one or more of the exempt purposes in section 501(c)(3).  Id.

In applying the operational test, "exclusively" does not mean "solely" or "absolutely without exception".  Nationalist Movement v. Commissioner, 102 T.C.

**[*10]** 558, 576 (1994) (quoting Church in Boston v. Commissioner, 71 T.C. 102, 107 (1978)), aff'd, 37 F.3d 216 (5th Cir. 1994); see also Copyright Clearance Ctr., Inc. v. Commissioner, 79 T.C. 793, 803-804 (1982).  Nonetheless, the presence of a single nonexempt purpose, if substantial, precludes exempt status, regardless of the number or importance of truly exempt purposes.  Better Bus. Bureau v. United States, 326 U.S. 279, 283 (1945); Redlands Surgical Servs. v. Commissioner, 113 T.C. 47, 71-72 (1999), aff'd, 242 F.3d 904 (9th Cir. 2001); Nationalist Movement v. Commissioner, 102 T.C. at 576; Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1065 (1989); sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. ("An organization will not be so regarded [as operated exclusively for one or more exempt purposes] if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.").

Exempt purposes are those specified in section 501(c)(3), such as religious, charitable, scientific, and educational purposes.  Sec. 1.501(c)(3)-1(d)(1)(i), Income Tax Regs.  Respondent does not dispute that petitioner's purpose as outlined in the application and its articles of incorporation is an exempt purpose within the meaning of section 501(c)(3).  According to respondent, however, petitioner did not engage in any activity in furtherance of that exempt purpose.  Furthermore, respondent argues that petitioner never intended on following

**[\*11]** through with plans to cosponsor the Veterans' Inaugural Ball in January 2009 or to host various events proposed for 2010. Instead, respondent contends that it was petitioner's intention to raise funds for purported events "without providing the promised benefit event" as suggested in the March 16, 2010, Army Times article.

Petitioner admits that it was inactive from September 2001 through December 2008 but contends that it tried to host events in 2009 and 2010 that for various reasons never occurred.

To the extent that the parties disagree over why certain events contemplated by petitioner did not materialize, the Court need not resolve that dispute as it is not relevant to our conclusion. Instead, the Court focuses on petitioner's exempt purpose and the activities that it engaged in, or, more to the point, failed to engage in, with respect to that purpose.

According to its application petitioner intended to further its exempt purpose by organizing monthly town hall meetings, 20 national workshops yearly, and quarterly congressional forums in addition to a nationwide media campaign. The application allocates petitioner's time and resources as follows: (1) 25% to town hall meetings, beginning September 2001; (2) 55% to national workshops, beginning October 2001; (3) 10% to congressional forums, beginning November

**[\*12]** 2001; and (4) 10% to its nationwide media campaign. Notably, petitioner did not over time meaningfully organize or allocate resources to any of the aforementioned activities. Accordingly, on the basis of the record before us, the Court concludes that petitioner failed to satisfy the operational test because it did not engage in any activity that accomplished one or more of the exempt purposes in section 501(c)(3). The Court therefore holds that regardless of the applicable standard of review, see supra note 5, respondent properly revoked petitioner's tax-exempt status effective January 1, 2008, because it was not operated exclusively for an exempt purpose. Accordingly, the Court need not address the other grounds on which respondent revoked petitioner's exempt status.

To reflect the foregoing,

Decision will be entered

for respondent.