T.C. Memo. 1995-508


UNITED STATES TAX COURT


STANLEY B. AND ROSE M. WHITTEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19965-94.          Filed October 25, 1995.


Stanley B. and Rose M. Whitten, pro sese.

<u>Marjory A. Gilbert</u>, for respondent.


MEMORANDUM OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1] Unless otherwise indicated, all section references are to
                                        (continued...)

This case is before the Court on the parties' cross-motions for summary judgment. The issue for decision concerns the proper characterization of expenses incurred by petitioner Stanley B. Whitten in attending and participating in the television game show "Wheel of Fortune".

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom

---

[1](...continued)
the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

As explained in more detail below, we agree with the parties that the issue before us is ripe for summary adjudication.

The following is a summary of the relevant facts that do not appear to be in dispute. They are stated solely for purposes of deciding the pending motions and are not findings of fact for this case. Fed. R. Civ. P. 52(a); Sundstrand Corp. v. Commissioner, supra at 520.

## Background

Stanley B. and Rose M. Whitten (petitioners) are husband and wife who filed a joint Federal income tax return for 1991. At the time that their petition was filed in this case, petitioners resided in Northbrook, Illinois.

Stanley B. Whitten (petitioner) is a criminal investigator with the United States Securities and Exchange Commission. He is also a nationally recognized cruciverbalist who has constructed crossword puzzles that have appeared in newspapers and magazines throughout the United States, including the Chicago Tribune, the New York Times, and the Washington Post.

In early 1990, petitioner learned that the staff of the "Wheel of Fortune" television game show was coming to Chicago, Illinois, to interview and select contestants to appear on the program. Petitioner applied for and received an invitation to

compete to be a contestant. The selection process began with a written examination that served to eliminate many of the applicants from consideration, followed by a personal interview and a mock session of the game. At the conclusion of this process, petitioner was one of approximately 30 applicants who were selected to appear on the program.

In mid-January 1991, petitioner was contacted by the "Wheel of Fortune" game show and arrangements were made for petitioner to take part in the taping of the program to be conducted in Los Angeles, California, on February 8, 1991. In anticipation of his appearance on the program, petitioner watched "Wheel of Fortune" nearly every night and acquired both a computerized and manual version of the game with which to practice.

Because the producers of the "Wheel of Fortune" program film 8 shows in one day, contestants are required to bring additional changes of clothing so that the winner of one show can reappear on the next show in a different outfit and thereby simulate different days. Contestants who win three games in a row are not permitted to return for a fourth show.

"Wheel of Fortune" contestants are required to sign a document entitled "CONTESTANT RELEASE FORM" which states in part:

> I have not paid or accepted any money or other valuable consideration (including a division of prizes) in connection with my appearance on the Program, or authorized anyone else to do so. I am aware that payment or acceptance of or agreement to pay or accept any money or valuable consideration for the appearance

of any person or the mention of anything on the Program without disclosure to NBC prior to broadcast is a federal offense punishable by fine and/or imprisonment. I agree that if anyone tries to induce me to do any such act, I shall immediately notify a NBC Program Practices representative.

The release form further states that any travel undertaken by a contestant in connection with the contestant's appearance on the program shall be at the contestant's sole risk and expense.

Petitioner, as well as his wife and three of his children, flew to Los Angeles on February 7, 1991, and petitioner appeared for the taping of "Wheel of Fortune" as scheduled. Petitioner won three consecutive games and was awarded cash prizes in the total amount of $14,850 and a 1991 Chevrolet Geo Tracker automobile. The "Wheel of Fortune" programs that petitioner appeared on were televised nationally on February 18, 19, and 20, 1991.

As indicated, petitioners filed a joint 1991 Federal income tax return (Form 1040). Petitioner's winnings from the "Wheel of Fortune" game show were reported as "other income" on line 22 of Form 1040 in the amount of $19,830. The $19,830 entry represents the sum of the value of the GEO Tracker and petitioner's cash winnings of $14,850, reduced by the expenses that petitioner and his family purportedly incurred, namely $1,820, for transportation, meals, and lodging in order to participate as a

contestant on the show in Los Angeles.[2]  Petitioners' reporting position is premised on the theory that the foregoing expenses represent "gambling losses" that may be offset directly against petitioner's "gambling winnings" from the program.

Respondent determined a deficiency in the amount of $582 in petitioners' Federal income tax for 1991.  Specifically, respondent determined that petitioners failed to report $1,820 in income from petitioner's winnings on the "Wheel of Fortune" game show.[3]  In respondent's view, the $1,820 in expenses that petitioner purportedly incurred in attending and participating in the game show are properly characterized either as nondeductible personal expenses under section 262 or as miscellaneous itemized deductions that may only be deducted subject to the 2-percent floor prescribed by section 67(b).[4]

---

[2]  It would appear that the expenses in issue include a charge of $58.71 for the cost of printing 200 postcards depicting petitioner standing on the set of "Wheel of Fortune" with Vanna White, the program's hostess.  Petitioner apparently distributed the postcards to family and friends.

[3] In turn, the resulting increase in petitioners' adjusted gross income generated a small decrease in petitioners' itemized deductions pursuant to the limitation set forth in sec. 68.

[4] The notice of deficiency states in part:  "The expenses attributable to the taxable [gambling] winnings are reportable on Schedule A, lines 20 and 24."  Petitioners construe this language to mean that respondent concedes the deductibility of the expenses in issue.  Respondent denies that this language reflects any concession.

Petitioners invoked this Court's jurisdiction by filing a timely petition for redetermination. After respondent filed her answer and petitioners filed a reply, petitioners filed a Motion for Summary Judgment, supported by a memorandum of law, an affidavit, and several exhibits. Petitioners contend that they are entitled to summary judgment because:

> Petitioner's winnings on the "Wheel of Fortune" television show were gambling winnings and that, accordingly, the Petitioner's expenses attributable to the winnings are aggregable with wagering losses and deductible pursuant to I.R.C. § 67(b)(3) and I.R.C. § 165(d), not subject to the 2-percent floor on miscellaneous itemized deductions, up to the amount that the aggregate amount does not exceed the amount of gambling winnings. [Fn. ref. omitted.]

Notably, petitioners do not seek summary judgment with respect to the specific amount of petitioner's purported "wagering losses", but instead assume erroneously that said issue can be resolved under Rule 155. In this regard, petitioners' pending motion is more appropriately characterized as a motion for partial summary judgment.

Respondent filed an objection to petitioners' motion along with her own Motion for Summary Judgment. Both documents were accompanied by a supporting memorandum of law and an affidavit.

The parties' cross-motions for summary judgment were called for hearing in Washington, D.C. Both parties appeared and presented argument with respect to the motions. In addition to appearing at the hearing, petitioners filed a written statement

with the Court pursuant to Rule 50(c) and a Motion to Strike certain portions of respondent's supporting memorandum of law and affidavit.[5]

During the course of the hearing in Washington, D.C., petitioner conceded that he is not in the trade or business of either gambling or appearing as a contestant on television game shows. In addition, petitioner stated that his theory of the case rests solely on section 165.

Discussion

The issue for decision concerns the proper characterization of the expenses incurred by petitioner in attending and participating in the television game show "Wheel of Fortune".[6] Respondent determined that petitioners erred in netting the expenses that petitioner incurred for transportation, meals, and lodging against petitioner's "Wheel of Fortune" winnings. As indicated, respondent determined that the expenses in dispute are

---

[5] Petitioners' Motion to Strike is directed at what petitioners believe are unfair or inaccurate allegations, particularly certain allegations in which respondent characterizes the expenses incurred by petitioner as vacation expenses. Given that motions to strike are not favored, see Estate of Jephson v. Commissioner, 81 T.C. 999, 1001 (1983), and in view of the fact that the allegations in question have not influenced our disposition of the pending motions, we see no prejudice to petitioners and shall deny their Motion to Strike.

[6] Because petitioner concedes that he is not in the trade or business of either gambling or appearing as a contestant on television game shows, it follows that the expenses in question, if deductible, would not be deductible from gross income. Sec. 62(a)(1); see sec. 162(a).

either nondeductible personal expenses under section 262[7] or miscellaneous itemized deductions that may only be deducted subject to the 2-percent floor prescribed by section 67(a). Either theory would provide a sound basis for sustaining respondent's deficiency determination.[8]

In contrast, petitioners contend that the expenses in issue represent petitioner's wager or bet that he would win cash or other valuable prizes on the "Wheel of Fortune" game show. As such, petitioners maintain that the prizes that petitioner actually won are wagering winnings and that the expenses incurred are properly characterized as wagering losses under section

---

[7] Sec. 262(a) provides the general rule that no deduction shall be allowed for personal, living, or family expenses. Sec. 1.262-1(b)(5), Income Tax Regs., provides in pertinent part:

> Expenses incurred in traveling away from home (which include transportation expenses, meals, and lodging) and any other transportation expenses are not deductible unless they qualify as expenses deductible under section 162 * * * (relating to trade or business expenses), section 170 * * * (relating to charitable contributions), section 212 * * * (relating to expenses for production of income), section 213(e) * * * (relating to medical expenses), or section 217(a) * * * (relating to moving expenses). * * *

[8] Respondent's determination will be sustained even if we conclude that the expenses in question are properly characterized as miscellaneous itemized deductions because these expenses do not exceed 2 percent of petitioners' adjusted gross income and, therefore, would provide no tax benefit to petitioners. See sec. 67.

165(d).[9]  Wagering losses under section 165(d) are excluded from the definition of miscellaneous itemized deductions for purposes of the 2-percent floor on miscellaneous itemized deductions prescribed by section 67.  Sec. 67(b)(3); cf. sec. 68, and see n.4.

The Commissioner's determinations in a notice of deficiency are presumed to be correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, because deductions are a matter of legislative grace, the taxpayer must show that he or she comes squarely within the terms of the statute granting such deduction.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Nelson v. Commissioner, 30 T.C. 1151, 1154 (1958).

The parties have devoted a substantial amount of time and effort debating the issue of whether a contestant's appearance on the "Wheel of Fortune" game show constitutes a wagering transaction governed by the provisions of section 165(d).  In our opinion it does not.[10]  However, we need not definitively decide

---

[9] Sec. 165(d) provides as follows:

(d) Wagering Losses.--Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

[10] In this regard we observe that the release form executed by each contestant on "Wheel of Fortune" expressly provides that
(continued...)

this because such issue begs the question regarding the proper characterization of the expenses incurred by petitioner in attending and participating in the "Wheel of Fortune" game show. Consequently, we will focus our attention on the more pertinent issue of whether the expenses in dispute can be characterized as wagering losses within the meaning of section 165(d).

Section 165(d) was originally codified as section 23(g) of the Revenue Act of 1934, ch. 277, tit. I, 48 Stat. 680, 689.[11] Notwithstanding the long history of the section, the term "wagering losses" is not defined in either the Internal Revenue Code or the regulations. Nor is the term defined in the legislative history underlying section 165(d). See H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 554, 570; S.

---

[10](...continued)
the contestant may not pay or agree to pay money or valuable consideration in connection with his or her appearance on the program. In other words, no bet or wager between "Wheel of Fortune" and the contestant is permitted. Moreover, if petitioner's contention was correct and if a contestant's appearance on "Wheel of Fortune" constituted a wagering transaction governed by the provisions of sec. 165(d), then so would any other activity where there was an element of risk, such as investing in the stock market or traveling cross-country for a job interview. See Jasinski v. Commissioner, T.C. Memo. 1978-1 (investing in capital assets is not a wagering transaction within the meaning of sec. 165(d)).

[11] Sec. 23(g) of the Revenue Act of 1934 was subsequently redesignated as sec. 23(h) by the Revenue Act of 1938, ch. 289, 52 Stat. 447, 461, and continued as such in the 1939 Code until enacted as sec. 165(d) in the 1954 Code.

Rept. 558, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 586, 605.

It is within this relative vacuum of authority that petitioners rely on Kozma v. Commissioner, T.C. Memo. 1986-177, as support for their position that the expenses disputed herein constitute wagering losses under section 165(d). As explained below, petitioners' reliance on Kozma v. Commissioner is misplaced.

In Kozma v. Commissioner, supra, the taxpayer, an individual engaged in the trade or business of gambling, enjoyed gross gambling winnings (gross receipts) of $9,750 and $15,191 for 1980 and 1981, respectively. However, after combining the amounts that he paid for wagering tickets with business expenses for transportation, depreciation, meals and lodging, admission fees, and office supplies, the taxpayer reported net losses in respect of his gambling business for both 1980 and 1981.[12] The Commissioner issued a notice of deficiency disallowing the losses claimed by the taxpayer on the ground that gambling losses are

---

[12] The taxpayer paid $9,506 and $14,085 for wagering tickets in 1980 and 1981, respectively, leaving him with a gross profit from gambling of $244 and $1,106 for 1980 and 1981, respectively. In addition, the taxpayer incurred business expenses for transportation, depreciation, meals and lodging, admission fees, and office supplies in the amounts of $3,468 and $8,148 for 1980 and 1981, respectively. After subtracting both the cost of his wagering tickets and his business expenses, the taxpayer reported a net loss from gambling in the amount of $3,244 and $7,042 for 1980 and 1981, respectively.

allowable only to the extent of gambling winnings under section 165(d).

In proceedings before this Court, the taxpayer argued that the expenses incurred for transportation, depreciation, meals and lodging, admission fees, and office supplies constitute business expenses under section 162(a), rather than wagering losses under section 165(d), and that such expenses are deductible by virtue of section 162(a) notwithstanding the limitation imposed by section 165(d).

Focusing on the tension between section 162(a) and section 165(d), we held that the Commissioner was correct in disallowing the taxpayer's business expenses to the extent that those expenses generated an overall loss from the taxpayer's gambling business.  In so holding, we relied on Estate of Todisco v. Commissioner, 757 F.2d 1 (1st Cir. 1985), affg. T.C. Memo. 1983-247, and Offut v. Commissioner, 16 T.C. 1214 (1951), as well as the well-settled principle that a taxpayer cannot use a net operating loss from gambling to offset income from other sources or carry such a loss over or back to another taxable year.

Unlike the taxpayer in Kozma v. Commissioner, supra, petitioner admits that he is not in the trade or business of gambling and that he did not incur losses or expenses in excess of his "wagering winnings".  In this light, it is evident that

Kozma v. Commissioner can be distinguished on its facts from the present case.

Nor are we persuaded that the legal holding in Kozma v. Commissioner, supra, is controlling in the present case. Rather, Kozma v. Commissioner stands for the narrow proposition that, in the case of a professional gambler, the limitation imposed under section 165(d) limiting wagering losses to wagering winnings overrides the deduction otherwise allowable under section 162(a) for ordinary and necessary business expenses. See Valenti v. Commissioner, T.C. Memo. 1994-483. Petitioners apparently believe that Kozma v. Commissioner, supra, together with the cases cited therein, stand for the proposition that all expenses related to a wagering activity are properly characterized as wagering losses under section 165(d). However, we do not glean from those cases any intention to eliminate the distinction between wagering losses, i.e., the amount of wagers or bets lost on wagering transactions, and expenses related thereto, e.g., expenses for transportation, meals, and lodging incurred to engage in wagering transactions. See Boyd v. United States, 762 F.2d 1369, 1372-1373 (9th Cir. 1985).

Consistent with the foregoing, we conclude that wagering losses must be accounted for and reported separately from the expenses incurred by the taxpayer in order to engage in the underlying wagering transaction. In applying this rule to the

facts presented herein, we hold that the expenses incurred by petitioner in order to attend and participate in the "Wheel of Fortune" game show are at best expenses, deductible as a miscellaneous itemized deduction under section 67, rather than wagering losses under section 165(d).  In so holding, we reject petitioners' contention that the expenses in issue are tantamount to a bet or wager.  Unlike a wager or bet, petitioner incurred the expenses in question in exchange for specific goods and services, such as transportation, meals, and lodging.  Further, we doubt that Congress ever intended to allow casual gamblers to treat expenses for transportation, meals, and lodging as anything other than either miscellaneous itemized deductions or nondeductible personal expenses.  Consequently, we shall deny petitioners' Motion for Summary Judgment and grant respondent's cross motion.

In order to reflect the foregoing,

<u>An order denying petitioners'</u>
<u>Motion for Summary Judgment and</u>
<u>petitioners' Motion to Strike and</u>
<u>granting respondent's Motion for</u>
<u>Summary Judgment will be entered</u>.